[Civ. No. 49925. First Dist., Div. One. Aug. 17, 1981.]

KENNETH R. STARBIRD, Plaintiff and Appellant, v.
COUNTY OF SAN BENITO et al., Defendants and Respondents;
J. G. LEVRATTO, Real Party in Interest and Respondent.

COUNSEL

Murphy & Thompson and Roy C. Gunter III for Plaintiff and Appellant.

David E. Pipal, District Attorney, and William G. Tiffany for Defendants and Respondents.

Colin Peters and Stephen M. Peters for Real Party in Interest and Respondent.

---

**OPINION**

ELKINGTON, J.—Kenneth R. Starbird, a resident of San Benito County (County), commenced an action for a writ of mandate and an injunction against the County and certain of its agencies and officials, and one J. G. Levratto. He sought thereby (1) to vacate a use permit (Use Permit) granted Levratto for land (Land) owned by him and located in the County about one-half mile from the boundary of the City of San Juan Bautista, and (2) to prevent any building upon it until certain legal requirements were met. Judgment was entered in the action against Starbird and in favor of the several defendants.

Starbird has appealed from the judgment.

There is no substantial controversy in respect of the following facts of the case.

The County had declared certain roads and highways within its boundaries to be "scenic highways" (Scenic Highways). Abutting land to a depth of 500 feet was given a zoning classification of "SH—Scenic Highway." Levratto's Land, about nine acres, had originally been zoned M-2 (Heavy Industrial). But since it fronted upon two of the County's Scenic Highways it became part of a "combined" zoning district with classifications M-2 (Heavy Industrial) *and* SH (Scenic Highway).

Levratto wished to construct upon the Land a farm machinery manufacturing complex. Upon his application the appropriate County ministerial agency issued a building permit for such construction, under the M-2 (Heavy Industrial) zoning classification. But a few days later the County's planning executive, observing that the Land was "designated as a Scenic Highway Zone," issued a "Stop Work Order" and reported the problem to the County's planning commission (Commission). Hearings were held to consider "a proposal to establish a *manufacturing use or uses* [our italics] on property which is zoned M-2, heavy industrial, combined with a Scenic Highway area, ..." The proposed Use Permit was approved with certain restrictive conditions by the Commission, over protests of Starbird and other County residents.

The protesters appealed the Commission's decision to the County's board of supervisors (Board).

Upon the Board's ruling affirming the Commission's grant of the Use Permit, Starbird commenced the instant action.

I.

The first contention of Starbird's appeal is that the Use Permit was void for lack of preparation and consideration by the County of an environmental impact report.

The record establishes that the County had *not*, through the Commission, or Board, or otherwise, secured or considered an environmental impact report in respect of the Use Permit.

Division 13 of Public Resources Code (§§ 21000-21176), also known as the California Environmental Quality Act (CEQA), provides generally that a "local agency" such as the County *shall* obtain and consider an environmental impact report (see § 21061), when engaging in a "*discretionary project*" such as "*the issuance of conditional use permits*," unless it "determines that a proposed project . . . does not have a significant effect on the environment," in which event it "shall adopt a negative declaration to that effect." (See Pub. Resources Code, § 21080, subds. (a), (c); italics added.) The requirement is mandatory, and failure to comply "will have the effect of 'invalidating the governmental action[s]' which follow." (*Plaggmier* v. *City of San Jose* (1980) 101 Cal.App.3d 842, 854 [161 Cal.Rptr. 886]; and see *People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 840-843 [115 Cal.Rptr. 67].)

We observe neither record indication, nor contention, that the County had, or reasonably could have, adopted a negative declaration that Levratto's conditional Use Permit would be without "a significant effect on the environment, . . ."

It follows that the *Use Permit* granted Levratto by the County should have been adjudged invalid.

Moreover, it appears that under other criteria adopted by the County, the Use Permit should have been found invalid.

Section 21082 of CEQA mandates the following: "All public agencies [such as the County] shall adopt by ordinance, resolution, rule, or regulation, objectives, criteria, and procedures for the evaluation of projects and the preparation of environmental impact reports and negative declarations pursuant to this division...."

Pursuant to section 21082 the County had adopted what it termed "Guidelines for implementation of California Environmental Quality Act of 1972, as amended 1976" (Guidelines). Although termed "Guidelines" by the County, they manifestly became rules which must be followed by the County upon their adoption. (Treating them as "guidelines" for future legislative action by the County would result in no compliance, ever, with § 21082.)

We quote from relevant portions of the Guidelines.

"*Project* means: (a) the whole of an action, which has a potential for resulting in a physical change in the environment, directly or ultimately, ...

"'If any aspects of the project, either individually or cumulatively, may cause a significant effect on the environment, regardless of whether the overall effect of the project is adverse or beneficial, then an EIR must be prepared.'

"*Ministerial Projects.* These are projects in which little or no discretionary action is involved.... Ministerial projects are exempt from the requirements of CEQA, and no environmental documents are required. The determination of what is 'ministerial' can most appropriately be made by the particular public agency involved based upon its analysis of its own laws, and each public agency should make such determination either as a part of its implementing regulations or on a case-by-case basis.

"Where a project involves an approval that contains elements of both a ministerial action and a discretionary action, the project will be deemed to be discretionary and will be subject to the requirements of CEQA.

"*Discretionary Project* [which 'will be subject to the requirements of CEQA'] means an activity defined as a project which requires the exercise of judgment, deliberation, or decision on the part of the public

agency or body in the process of approving or disapproving a particular activity, as distinguished from situations where the public agency or body merely has to determine whether there has been conformity with applicable statutes, ordinances, or regulations.

"An EIR on a construction project will necessarily be more detailed in the specific effects of the project than will be an EIR on the adoption of a local general plan or comprehensive zoning ordinance because the effects of the construction can be predicted with greater accuracy."

Levratto's application to the County to establish "a manufacturing use or uses on property which is zoned M-2, heavy industrial, combined with a Scenic Highway area [zoned SH]" was patently a "project" having a "potential for resulting in a physical change in the environment, ..." And the project—a Use Permit requiring "the exercise of judgment, deliberation, or decision on the part of the [Commission and Board] in the process of approving or disapproving a particular activity"—manifestly required an environmental impact report.

We have considered the County's argument that Levratto's application related to "the issuance of building permits, not land use ...." It is observed, as previously noted, that the County treated the application as a "proposal to establish a *manufacturing use or uses* on property which is zoned M-2, heavy industrial, combined with a Scenic Highway area, ..." (Italics added.) And in the superior court the County made the concession that "if an M-2 Use Permit request is obnoxious or offensive and is located in an SH area, the Planning Commission cannot approve such a use as being inconsistent with the purpose of the SH designations and with the County General Plan."

Furthermore, and contrary to the County's contention, Levratto had no unconditional *right* to a *building permit* for a heavy industrial, manufacturing use under the "combined" classifications of the County's zoning ordinance. That ordinance provided: "Sec. 57.1 Special Regulations 'SH' Area. The establishment of any use provided for in an SH zoning area shall be subject to the approval of the Planning Commission ...."

It is found significant that in approving the Use Permit, the Board appears to have rejected contrary advice from its own attorney. At the hearing a supervisor asked if the County's zoning ordinance required an environmental impact report. The attorney replied: "Well, it's not an or-

dinance requirement. That's an interpretation of current law and there is case law that would support their position that there was enough discretion exercised by the Planning Commission in reviewing setbacks and architectural design ... that an EIR would be required.... I said that there is case law to support the argument that there was enough discretion exercised by the Planning Commission .... In their review that CEQA comes into play and, therefore, you would have to at least make an initial study and, perhaps, there you would adopt an EIR; and that is also, as I explained to you Board members, that is what at least one Attorney General ... has advised us, ... [I]t's also clear that in many cases where a great deal of discretion is exercised by an agency that you must comply with CEQA, and this is one of those things that falls in the gray area—*it's partly ministerial and partly discretionary.*" (Italics added.)

(It will be recalled that the County's own Guidelines required an environmental impact report on a project "that contains elements of both a ministerial action and a discretionary action" (see p. 661, *ante*).)

And, commenting later upon the Board's action, the County's planning executive stated, "the County's only error was in assuming this review did not require an E.I.R."

Another of the County's present contentions is that its action was not "discretionary," but "was ministerial in nature and therefore exempt from the requirements of [CEQA]." The point is refuted by the County's Guidelines defining as "discretionary" a "project" which "requires the exercise of judgment, deliberation, or decision on the part of the public agency," as distinguished from "ministerial" situations "where the public agency or body merely has to determine whether there has been conformity with applicable statutes, ordinances, or regulations."

We conclude, as contended by plaintiff Starbird, that the Use Permit granted Levratto by the County was invalid for lack of the required environmental impact report.

## II.

We advert now to Starbird's contention that the "County did not comply with its own Zoning Ordinance when it granted Levratto the Use [and building] Permit[s]; ...."

The County's zoning ordinance provided: "No building permit shall be issued for any use in a district which is combined with an [SH] area unless: (a) All buildings, layout and landscaping plans ... shall have been submitted to and approved by the Planning Commission."

The record indicates that no such plans had been submitted to or approved by the Commission. For that reason also, the use and building permits issued Levratto by the County must be deemed invalid.

### III.

Plaintiff contends that the "general plan of County does not meet the requirements of California law."

We need not here recount the many apparent shortcomings of the general plan in light of the requirements of Government Code sections 65300-65360 and CEQA.

We discern from the County's brief a recognition of such inadequacies. We are there advised that the general plan and its elements were "not written by lawyers and cannot be expected to meet the standards for a formal legal document," but nevertheless they "should be upheld." The general plan's vitality, it is argued, becomes clear if by "interpretation" other regulations of the Board and other public documents be deemed incorporated in it by "reference." "[I]t is the substance and practical implications and not the form ... which should be judged against the requirement of the Government Code and the Legislature's intent ...." It was "written using fairly broad language, but its import is clear," it is insisted.

"Also of note [points out the County] is the fact that the State Legislature is changing the law to liberalize the requirements for an adequate general plan. The new law effective January 1, 1981 (S.B. 1448, 1980 Statutes, Chap. 837), will allow the specificity and detail of a general plan to reflect local conditions and circumstances."

We infer a purpose of the County to promptly amend or reorganize its general plan under the changed law, now codified as Government Code sections 65300.7, 65301.5, 65302.1 and 65302.6, and to integrate the County's zoning ordinance with it. In effectuating its purpose the County will be well advised to consider the mandates of CEQA in respect of its general plan and any zoning ordinance enacted pursuant to it.

## IV.

■ Plaintiff Starbird seeks attorney fees under the so-called "private attorney general" concept according to Code of Civil Procedure section 1021.5.

Section 1021.5 provides that "a court *may* award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, [and] (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, ..." (Italics added.)

We conclude that the conditions for such an award against the County are here present. Plaintiff Starbird, by this action, vindicated important rights of the people of San Benito County which were ignored by the officials charged with enforcing them. In such a case it is held that an attorney fee award is "appropriate" (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 941, 942, 944 [154 Cal.Rptr. 503, 593 P.2d 200]), entitling the prevailing party "to an award of attorney's fees under this statute" (*Mack* v. *Younger* (1980) 27 Cal.3d 687, 689 [165 Cal.Rptr. 876, 612 P.2d 966]), and that the cause will ordinarily be remanded "to the court in which the trial was held for the purpose of taking evidence on, and fixing, the reasonable amount of fees to be awarded" (*idem*).

It has become unnecessary to resolve other points and contentions raised by the parties.

The judgment is reversed. The cause is remanded to the superior court for further proceedings not inconsistent with the views we have expressed. A request of plaintiff Starbird that this court make findings of fact is denied.

Racanelli, P. J., and Newsom, J., concurred.