[Civ. No. 68149. Second Dist., Div. Three. May 8, 1984.]

MARK SCHWARTZ, Plaintiff and Appellant, v.
CITY OF ROSEMEAD et al., Defendants and Respondents.

**COUNSEL**

O'Neill & Huxtable and Leroy A. Abelson for Plaintiff and Appellant.

Robert L. Kress, City Attorney, Wallin, Kress, Reisman, Price & Dilkes, Cary S. Reisman, Latham & Watkins and Peter H. Benzian for Defendants and Respondents.

**OPINION**

**LUI, Acting P. J.—**

SUMMARY

This appeal challenges the trial court's judgment insofar as it denies appellant attorneys fees requested pursuant to Code of Civil Procedure section 1021.5 (section 1021.5).[1]

Appellant Mark Schwartz (Schwartz) successfully obtained a writ of mandate ordering the City of Rosemead (City) to conduct an environmental assessment pursuant to the provisions of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). The City had

---

[1]Section 1021.5 states: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

contended that an environmental assessment was not required under CEQA for a proposed cogeneration plant to be included in California Federal Savings and Loan Association's (Cal Fed) construction project on property situated immediately adjacent to Schwartz' residence.

The trial court, utilizing its traditional equitable discretion, properly denied appellant's motion for attorneys fees under section 1021.5. Appellant failed to demonstrate that the necessity and financial burden of private enforcement were present in his action such as to justify an award of attorneys fees. Appellant also failed to comply with the provisions of Code of Civil Procedure section 389.6 (section 389.6), requiring timely notice of the filing of his action by serving a copy of his pleading on the Attorney General of the State of California. For these reasons, we affirm the judgment entered below.

### FACTUAL BACKGROUND AND PROCEEDINGS BELOW

Cal Fed planned to construct a data processing and service center (sometimes referred to herein as the project) on land it acquired from the City that was situated adjacent to Schwartz' residence. Before the City conveyed the land to Cal Fed, its redevelopment agency applied for a zoning change from A-1 (agricultural) to C-3D (medium commercial). The "D" refers to the necessity of a design review prior to the issuance of building permits.

Two public hearings concerning the proposed zoning change were scheduled and conducted in December 1979. Notices of these meetings were sent to adjacent landowners, including Schwartz. Schwartz appeared at both hearings, protested the proposed change in zoning and requested notice of future hearings regarding the project. Thereafter, the Planning Commission and the City Council of Rosemead approved the zoning change.

On January 8, 1981, the City first learned of Cal Fed's intent to construct a cogeneration plant on the project.[2] The City's planning director, John

---

[2]Cal Fed planned to use an electrical cogeneration power plant to provide a power source for the new building and to sell any excess power to a utility, Southern California Edison.

Such cogeneration facilities have been used as an alternative source of power. In fact, Health and Safety Code section 41515 includes the Legislature's findings and declarations that "(a) that present methods of generating and using energy in California result in substantial waste of such energy through the loss of exhaust steam and heat which is not recovered or otherwise put to use, and that this waste of energy results in adverse environmental and economic impacts and accelerates the need for new powerplant construction, and increases dependence upon imported oil, (b) that the use of cogeneration technology can substantially increase the efficiency of energy use in California and can also result in environmental and economic benefits for the people of the state, (c) that the expanded use of cogeneration technology is specifically encouraged as a matter of national energy policy through the tax and regulatory incentives provided in the National Energy Act, and through

Carmona, conducted an investigation and decided that the cogeneration plant was a permitted use under C-3 zoning and that there were no further discretionary approvals necessary for the cogeneration plant such as a conditional use permit. Carmona also decided that the cogeneration plant would not cause any significant adverse effects on the environment and therefore CEQA did not apply to the design review. Based on this conclusion, Carmona further concluded that the proposed cogeneration plant did not require either an environment impact report (EIR) or a negative declaration.[3] Carmona believed that the South Coast Air Quality Board, not the City, would be responsible for approving the building permits for the cogeneration plant.

Hearings were conducted by the City's planning commission on parking variances and design review for the project. However, notice was not given to persons who owned property adjacent to the project that the design review of the proposed cogeneration plant would be discussed at these hearings. The City's municipal code did not require public notice of design review hearings. Subsequently, on March 16, the City's planning commission conducted a hearing and approved the project without making any assessment as to possible environmental effects of the cogeneration plant. Schwartz did not receive notice of the March 16 hearing.

On March 31, Cal Fed commenced construction of the project. Schwartz first became aware of Cal Fed's intent to construct a building 20 feet from his property line on June 18. The next day, Schwartz learned that the building under construction was to house a cogeneration plant. He wrote the City and Cal Fed to express his intent to take legal action if the cogeneration plant was not relocated. Nevertheless, the construction continued.

On July 17, Schwartz filed an action alleging the following causes of action:[4] a first cause of action seeking a writ of mandate against the City and various of its representatives (Code Civ. Proc., § 1085); a second cause

---

state legislation which encourages the expeditious approval of cogeneration projects, and (d) the construction and operation of cogeneration facilities will result in an incremental air quality emissions benefit to the extent they reduce demand on existing utility combustion generation facilities in the same air basin and that such benefit should be recognized in determining requirements for new cogeneration projects."

[3]Public Resources Code section 21064 provides for the filing of a negative declaration which consists of a written statement by a responsible public agency stating the reasons why the proposed project will not have a significant impact on the environment and therefore will not require the preparation of an EIR.

Hereinafter, all references shall be to the Public Resources Code unless otherwise indicated.

[4]This appeal concerns only the attorneys fees related to Schwartz' prosecution of the first two causes of action. Only the City and Cal Fed remain as defendants; all other defendants were dismissed by stipulation. The third, fourth and fifth causes of action were later severed and are pending trial.

of action seeking an administrative mandamus against the City and various of its representatives (Code Civ. Proc., § 1094.5); a third cause of action seeking injunctive relief against Cal Fed; a fourth cause of action against Cal Fed seeking damages to his real property; and a fifth cause of action against the City and various of its representatives alleging violations of his civil rights (42 U.S.C. § 1983). Schwartz was denied a temporary restraining order.

The parties stipulated that the hearing on the petition would be set for August 28. Then on August 24, 1981, 34 days after the filing of his petition for writ of mandate and complaint, Schwartz served a copy of this pleading on the Attorney General pursuant to section 21167.7.[5]

Following a hearing on the petition, the trial court granted judgment on the first two causes of action and issued a writ of mandate generally compelling the following: (1) the City shall set aside the design review approval of the central plant and cogeneration equipment; (2) the design review of the project shall not be approved until Schwartz and other persons who own property within 300 feet of the project have received notice of a public hearing and an opportunity to appear at such hearing and present their views; (3) the City shall assess the environmental aspects of the project pursuant to CEQA and determine whether a negative declaration or an EIR should be prepared; (4) the City shall not issue further building permits on the project until it has complied with the writ. The trial court severed the remaining three causes of action, ordered a separate trial on those causes and then entered judgment on the first two causes of action.

Subsequently, on September 25, 1981, Schwartz filed a timely motion seeking attorneys fees from the City and Cal Fed pursuant to Code of Civil Procedure section 1021.5 and the common law substantial benefit doctrine. In this appeal, Schwartz has apparently abandoned his claim for attorneys fees on the common law substantial benefit doctrine because he has not

---

[5]Section 21167.7 provides that "[e]*very person who brings an action pursuant to Section 21167 shall comply with the requirements of Section 389.6 of the Code of Civil Procedure.* Every such person shall also furnish pursuant to Section 389.6 of the Code of Civil Procedure a copy of any amended or supplemental pleading filed by such person in such action to the Attorney General. No relief, temporary or permanent, shall be granted until a copy of the pleading has been furnished to the Attorney General in accordance with such requirements." (Italics added.)

Section 389.6 of the Code of Civil Procedure provides that, "[i]n any action brought by any party for relief of any nature other than solely for money damages where a pleading alleges facts or issues concerning alleged pollution or adverse environmental effects which could affect the public generally, *the party filing the pleading shall furnish a copy to the Attorney General of the State of California. Such copy shall be furnished by the party filing the pleading within 10 days after filing.*" (Italics added.)

argued for it in his appellate briefs. Accordingly, we shall determine whether Schwartz is entitled to attorneys fees pursuant to section 1021.5 only.

Three days prior to the scheduled hearing on Schwartz' motion for attorneys fees, his counsel filed a declaration in support of the motion which was signed by more than 700 people. The declaration states in essence that the signers reside in the vicinity of the project; that the writ of mandate Schwartz obtained compelling the respondents to comply with CEQA was important to their rights; that the signers received significant benefit from appellant's action because they will have an opportunity to express their opinions about the cogeneration plant at a public hearing, because the City will use more care in their environmental analysis of large projects and because the City will now comply with the relevant state environmental law. The declarants further state that they could not afford to help Schwartz pay his attorneys fees.

At the commencement of the hearing on the motion, the City moved to strike the declaration and other related documents submitted by appellant urging that these documents had not been timely filed. In discussing the motion to strike, the trial court indicated that it was inclined to continue the motion in order to provide the City with an opportunity to investigate and respond to the declaration. During a recess that followed, counsel discussed the trial court's comments. Counsel for Schwartz then withdrew the declaration in question.[6] The trial court heard argument on the merits of the motion and then took the motion under submission.

Subsequently, the trial court entered an order denying the motion for attorneys fees. The court later issued findings of facts and conclusions of law. Findings 22 through 25 are pertinent to the motion and state as follows:

"22. Petitioner did not initiate or prosecute this litigation in a representative capacity on behalf of any group or class of persons with the purpose of establishing general guidelines for the City of Rosemead or other public agencies to follow in enforcing or complying with the California Environmental Quality Act. Rather petitioner initiated and prosecuted this litigation to prevent what he perceived to be the threat of significant damage and depreciation to his own property.

"23. The judgment entered against the City of Rosemead partially granting petitioner's petition did not advance or effectuate any significant or im-

---

[6]We choose to consider the declaration even though it is arguably not part of the record on appeal because appellant asserts that the trial court's conditional admission of the declaration was error.

portant public right or policy. It merely applied existing statutory and case law to a specific set of facts and thus will have little, if any, precedential or teaching effect on either the City of Rosemead or public agencies generally.

"24. To the extent that any benefits accrued to any members of the public as a result of the judgment in this litigation, such benefits were incidental to the private purposes of petitioner for which this litigation was initiated and prosecuted and were not disproportionately important and valuable in comparison to petitioner's own personal gain.

"25. The attorneys' fees incurred by petitioner, which are in the approximate amounts of $22,000 for obtaining the Court's Writ of Mandate and $9,000 for attempting to obtain an award of attorneys' fees, were not out of proportion to petitioner's individual stake in this matter and did not transcend his personal interests in this matter."

On April 13, 1982, the trial court issued a supplemental judgment denying the attorneys fees pursuant to section 1021.5 and the common law substantial benefit doctrine. Appellant filed a timely notice of appeal from the supplemental judgment.

APPELLANT'S CONTENTIONS ON APPEAL

Schwartz contends on appeal that:

1. The trial court abused its discretion by denying his motion for attorneys fees pursuant to Code of Civil Procedure section 1021.5;

2. The trial court erred in placing conditions upon the admittance of the declaration signed by 700 residents;

3. He is entitled to recover fees relating to his fee motion and in prosecuting this appeal.

DISCUSSION

I

*The Scope of Appellate Review*

■ In reviewing the trial court's denial of Schwartz' motion for attorneys fees, we apply the well-established rule that an exercise of discretion "will not be disturbed on review unless abused. (6 Witkin, Cal. Procedure

(2d ed. 1971) p. 4234.) Even failure to state reasons for a discretionary decision does not constitute, by itself, abuse of discretion. [Citation.] Further, to be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest the miscarriage of justice. [Citation.]" (*In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495]; see also *Rich* v. *City of Benicia* (1979) 98 Cal.App.3d 428, 435 [159 Cal.Rptr. 473].)

We undertake our review of appellant's request for attorneys fees pursuant to these authorities.

II

*Section 1021.5 Authorizes Attorney Fee Awards*
*Provided Three Conditions Are Met*

Our Supreme Court's decision in *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*), set forth the three requirements which must be met in order for a plaintiff to recover attorneys fees pursuant to section 1021.5. ■ The private attorney general theory, as codified in this section, authorizes an award of attorneys fees when: (1) the action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate. (*Woodland Hills, supra,* 23 Cal.3d at pp. 934-935.) The trial court, "utilizing its traditional equitable discretion (now codified in § 1021.5) must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." (*Id.,* at p. 938.)

Whether appellant has met its requirement for an award of trial and appellate fees, and the reasonable amount of any award, are questions best decided by the trial court. (See *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 559 [183 Cal.Rptr. 73, 645 P.2d 124].)

III

*Appellate Decisions Construing Section 1021.5*
*In CEQA Actions*

Appellant relies heavily on three Court of Appeal decisions issued subsequent to *Woodland Hills* in contending that he is entitled to attorneys fees.

In *Rich* v. *City of Benicia, supra,* 98 Cal.App.3d 428 (*Rich*), the appellate court held that the trial court did not abuse its discretion in awarding attorneys fees. Rich had sued the City of Benicia and others to compel the preparation of an EIR in connection with the proposed conversion of an old residential house to commercial and multiple-residential purposes. Early in the proceedings, the parties entered into a stipulation that the City would prepare an EIR and the trial court subsequently awarded plaintiff attorney fees under section 1021.5. Both parties appealed the fee order. The appellate court upheld the award, relying on *Woodland Hills, supra,* 23 Cal.3d 917, holding: (1) the "important right" requirement was satisfied by Rich's lawsuit compelling the City's duty to comply with CEQA and to prepare an EIR in a case in which there was " 'considerable community interest and controversy' " (*id.,* p. 436); (2) the "significant benefit" requirement was satisfied although the "record is not so strong"—because Rich's action effectuated " 'a strong State policy to require a careful scrutiny of potential results before permitting the execution of projects that may significantly affect the environment' " and also because the City officials may now have a different attitude as to what is expected of them under CEQA (*ibid.*); and (3) the "[n]ecessity and financial burden of private enforcement" requirement was met although this third element of *Woodland Hills* "is by no means as clearly demonstrated by the record before us." (*Id.,* at p. 437.)[7] The appellate court concluded that the trial court's decision to award attorneys fees was within the scope of its discretion.

In *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988 [165 Cal.Rptr. 514] (*Friends*), a citizens group brought suit to halt a proposed street improvement project on grounds that the city had abused its discretion in adopting a negative declaration in lieu of an EIR. The appellate court held that the city abused its discretion in adopting a negative declaration when the city's initial study revealed that the effects of the project would cause increased traffic and noise, displacement of 12 families, removal of vegetation, landscaping and trees, loss of the residential community characteristics of the area with a corresponding decrease in residential property values, and a decrease in the visual and aesthetic quality of the area. The appellate court held that the trial court could award attorneys fees under section 1021.5 but remanded the matter for further proceedings because "[t]he trial court did not, however, render a determination on the third statutory requirement, that 'the necessity and financial burden of private enforcement are such as to make the award appropriate.' The [trial] court determined that the Friends had 'successfully carried the difficult and

---

[7]We question the *Rich* court's statement that "there appear to be no provisions for public enforcement of CEQA or of its guidelines." (*Id.,* at p. 437.) As we shall discuss later, the Attorney General can intervene in an action to enforce compliance with CEQA. It also appears that the Attorney General can initiate an action under section 21167.

heavy burdens of enforcing important environmental laws,' but did not determine to what extent, if any, this burden justified an attorney fee award. An award of attorney fees pursuant to section 1021.5 requires a determination by the trial court, upon remand of the cause, as to whether the necessity and financial burden of private enforcement placed a burden on the Friends disproportionate to their individual interests in the matter and made an attorney fee award appropriate. [Citation to *Woodland Hills.*]" (*Id.,* at p. 994.) The *Friends* court also held that attorneys fees may be awarded on the common law "substantial benefit rule."

In *Starbird* v. *County of San Benito* (1981) 122 Cal.App.3d 657 [176 Cal.Rptr. 149] (*Starbird*), a property owner was granted a conditional use permit to establish a manufacturing complex on property in a combined zoning district with classification of heavy industry and scenic highway. Starbird, a county resident, sought a writ of mandate and an injunction to vacate the use permit and to prevent any building on the land until certain legal requirements were met. The appellate court reversed the trial court's denial of the writ and injunction on grounds that the use permits were invalid for lack of an EIR. As to the attorney fee request under section 1021.5, the appellate court concluded "that the conditions for such an award against the County are here present. Plaintiff Starbird, by this action, vindicated important rights of the people of San Benito County which were ignored by the officials charged with enforcing them. In such a case it is held that an attorney fee award is 'appropriate' [*Woodland Hills*], entitling the prevailing party 'to an award of attorney's fees under this statute' [citation], and that the cause will ordinarily be remanded 'to the court in which the trial was held for the purpose of taking evidence on, and fixing, the reasonable amount of fees to be awarded' . . . ." (*Id.,* at p. 665.) Thus in *Starbird,* the necessity requirement was not addressed directly.

We interpret these three Court of Appeal decisions as compelling a trial court to exercise its discretion based upon the showing, or lack thereof, as to each of the three requirements set forth in section 1021.5 and *Woodland Hills, supra,* 23 Cal.3d 917.

IV

*Section 1021.5 and the Present Appeal*

A. *The Important Right and Significant Benefit Requirements Were Met*

In the present appeal, the trial court erred in finding that appellant did not advance any significant or important public right of policy. (Finding No. 23, *ante,* pp. 553-554.) In our view, appellant met the first statutory

requirement. *Rich, supra,* 98 Cal.App.3d 428, 435-436; and *Friends, supra,* 106 Cal.App.3d 988, 993-994, hold that the effectuation of the strong state policy expressed in CEQA was an "important right" within the meaning of section 1021.5. Appellant's action compelled the City's compliance with CEQA.

With respect to the second requirement of conferring a "significant benefit upon a large class of persons of a pecuniary and/or nonpecuniary nature," the record establishes that appellant met this requirement as well. By virtue of his action, appellant secured the opportunity for a large number of fellow residents and affected property owners to voice their concerns and objections to a cogeneration plant which was scheduled to be constructed without compliance with CEQA. His action not only ensured the City's compliance with CEQA, but permitted a large class of persons to contribute their input towards the City's ultimate decision.

We have more difficulty with the question whether appellant met the third requirement and shall discuss this separately.

**B.** *The Necessity and Financial Burden of Private Enforcement Requirement*

In discussing the third requirement of necessity and financial burden of private enforcement, *Woodland Hills* relied in part on the Court of Appeal decision in *County of Inyo v. City of Los Angeles* (1978) 78 Cal.App.3d 82, 89 [144 Cal.Rptr. 71], and quoted the following language from that decision: " 'An award on the "private attorney general" theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter." [Citation.]' " (*Woodland Hills, supra,* 23 Cal.3d at p. 941.)

■ Even though Schwartz' pleading was not framed as an action or proceeding to attack the City's failure to comply with CEQA under section 21167,[8] we must scrutinize his action under the provisions of CEQA, including section 21167.7, because he seeks attorneys fees premised on the notion that his action affected the public interest. If the action was never

---

[8]Section 21167 provides for "action or proceeding to attack, review, set aside, void, or annul" the acts of a public agency for noncompliance with CEQA and sets forth the time frame in which such suits must be commenced.

premised on the public interest but was for personal interest only, he would not be entitled to an award of attorneys fees under section 1021.5.

The trial court found that Schwartz did not initiate or prosecute the action in a representative capacity seeking to establish guidelines for the City's enforcement or compliance with CEQA. Instead, it found that Schwartz initiated the suit to prevent the threat of damage or depreciation to his property. (Finding No. 22.) The trial court also found that the attorneys fees Schwartz incurred "were not out of proportion to [his] individual stake in this matter and did not transcend his personal interests in this matter." (Finding No. 25.) The trial court's findings in this regard are supported by substantial evidence in the record.

The provisions of CEQA, specifically section 21167, authorize an action to review the public agency's noncompliance with CEQA. Section 21167 subdivision (a), provides that "[a]n action or proceeding alleging that a public agency is carrying out or has approved a project which may have a significant effect on the environment without having determined whether the project may have a significant effect on the environment shall be commenced within 180 days of the public agency's decision to carry out or approve the project or, if a project is undertaken without a formal decision by the public agency, within 180 days after commencement of the project."

Appellant's purpose and objective in bringing the action is demonstrated by his pleading which characterized the proposed cogeneration plant as a *private* nuisance which should be enjoined. A private nuisance is a civil wrong based upon disturbance of rights in land; a public nuisance is based upon an interference with the rights of the community at large. (47 Cal.Jur.3d, Nuisance, § 24.) Paragraph 16 of the pleading states that "[t]here is ample room . . . to construct the electrical power generation plant in a different location so that a 250 foot setback from [appellant's] property can be maintained."

Even if it could be argued that the determinative factor of whether a plaintiff could receive private attorney general's fees for pursuing his action is the *result* of the action as compared to the *motivation* for the action, appellant herein fails to convince us that the result he achieved was more than merely incidental to his purely private purpose in seeking to have the cogeneration plant moved to a more desirable location away from his property line.

Appellant's motion for attorneys fees was not made until after the judgment on the writ of mandamus was entered. This further demonstrates that appellant's initial motivation was for private purposes. It also demonstrates

that he did not expect and was not concerned about the recovery of his attorneys fees until some later point in time.[9]

Appellant's own estimation of the value of his property was $700,000, and that the cogeneration plant would diminish his property value by $100,000. He claimed $22,000 in attorneys fees in obtaining the writ. Given these amounts and the evidence of appellant's motive in initiating the suit, we find no abuse of discretion in the trial court's denial of attorneys fees on the basis of the third requirement of section 1021.5. In our view, the trial court's finding that appellant's attorneys fees were not "out of proportion to his individual stake in [this action]" and "did not 'transcend [his] personal interest'" is supported by substantial evidence in the record. (See *Woodland Hills, supra,* 23 Cal.3d at p. 941, quoting *County of Inyo* v. *City of Los Angeles, supra,* 78 Cal.App.3d at p. 89.)

C. *Appellant's Failure to Timely Serve the Attorney General Precludes a Showing of the Necessity and Financial Burden of Private Enforcement of This Suit*

The trial court's decision to deny appellant's motion for attorneys fees is also justified on grounds that he failed to serve the Attorney General with a copy of the pleadings within 10 days of the filing of his action as required by section 21167.7 and section 389.6 (*ante,* fn. 5); thus, he failed to meet the third requirement of section 1021.5. ■ According to the well-established rule of law, "[i]f the *decision* of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion." (Italics in original.) (6 Witkin, Cal. Procedure (2d ed. 1971), Appeals, § 226, pp. 4215-4216; see also *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) Even though the third requirement was not utilized by the trial court, it can serve to support the judgment entered below.

Appellant served the Attorney General 34 days after the filing of this action and only 4 days prior to the hearing on his petition for a writ of mandate.

In a declaration filed by Cary Reisman, counsel for the City, Reisman declares that Deputy Attorney General Doug Noble told Reisman "that because of [appellant's] late service, his [environmental] section had not had a chance to even review the petition preliminarily" and that "the copy of

---

[9]Petitioner's complaint did pray for attorneys fees. However, he made no reference to section 1021.5.

the petition served . . . was not accompanied by any responsive papers and did not contain any indication of its filing date with the court."

Government Code section 12600, subdivision (b), states the legislative findings and declarations regarding environmental actions as follows: "It is in the public interest to provide the people of the State of California through the Attorney General with adequate remedy to protect the natural resources of the State of California from pollution, impairment or destruction." Although the Legislature did not select the Attorney General as the exclusive protector of the environment, as evidenced by Government Code section 12601, which states that "[t]he provisions of this article [§ 12600 et seq.] are not exclusive," the Legislature did make provisions for public enforcement of CEQA. The above sections of the Government Code should be read in conjunction with the provisions of CEQA, specifically section 21167. (Cf. *Rich* v. *City of Benicia, supra,* 98 Cal.App.3d 428, 437.) (Fn. 7, *ante.*)

Government Code section 12606 provides that "[t]he Attorney General shall be permitted to intervene in any judicial or administrative proceedings in which facts are alleged concerning pollution or adverse environmental effects which could affect the public generally." Appellant's failure to comply with the statutory requirements of serving a copy of his pleading to the Attorney General within 10 days of filing effectively precluded the Attorney General from exercising an informed decision regarding intervention in this action. If the Attorney General had been promptly notified of appellant's action and had decided to intervene, appellant may not have been required to pursue his lawsuit to the extent he ultimately did. The service of pleadings on the Attorney General has the effect of informing that office of the action and permits the Attorney General to lend its power, prestige, and resources to secure compliance with CEQA and other environmental laws, perhaps without the necessity of prolonged litigation. If the Attorney General is properly served and elects not to intervene, then a plaintiff's pursuit of a lawsuit becomes presumptively "necessary."

The requirement of serving the Attorney General is neither burdensome nor difficult. Complaints which involve the protection and the preservation of environmental conditions are presumptively matters of public interest and transcend any individual's private interests. Presumably, these actions can be identified at the time suits are contemplated and filed. A party litigant is charged with knowledge of the existence of the statutory provisions of section 21167.7 and section 389.6. Although situations may exist where these statutory provisions should not be strictly followed, we find no justification for relieving appellant of them in this appeal.

For the reasons stated herein, we affirm the judgment entered below.

Danielson, J., and Arabian, J., concurred.

A petition for a rehearing was denied May 31, 1984, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied July 26, 1984.