[No. A082242. First Dist., Div. Two. Sept. 8, 1999.]

STEPHEN M. WILLIAMS, Plaintiff and Appellant, v.
SAN FRANCISCO BOARD OF PERMIT APPEALS, Defendant and
Respondent.

**COUNSEL**

Stephen M. Williams, in pro. per., for Plaintiff and Appellant.

Louise H. Renne, City Attorney, and William M. Fleishhacker, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**HAERLE, Acting P. J.—**

## I. INTRODUCTION

Appellant, petitioner in the trial court, appeals from that court's denial of his motion for an award of attorneys' fees under Code of Civil Procedure section 1021.5 (hereafter section 1021.5). That motion followed the trial court's earlier partial grant of appellant's petition for a writ of administrative mandamus. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant is the owner of, and resident in, a Victorian-style building located in the 2600 block of Sutter Street in the Western Addition portion of San Francisco. Next door to his residence, at 2617 Sutter Street, was a single-story Victorian building which a developer named Ashbourne Construction Company (the real party in interest below, but not a party to this appeal) wanted to demolish and replace with a four-story, seven-thousand-square-foot, three-unit condominium or apartment building. The Planning Department of the City and County of San Francisco issued both demolition and construction permits for this project on March 12, 1997.[1] Two weeks later, appellant filed a "Protest and Appeal" of the issuance of both permits with respondent San Francisco Board of Permit Appeals (Board).

The Board held a hearing on appellant's protest on May 21 and rejected it. It also rejected his motion for a rehearing on June 11. Appellant then filed a

---

[1] Unless otherwise noted, all subsequent dates are also in 1997.

petition for a writ of administrative mandamus in the court below and also asked for a stay order. The petition was accompanied by appellant's declaration and application for a stay, 10 supporting declarations by his neighbors in the 2600 block of Sutter Street, and numerous exhibits.

The trial court denied appellant's application for a stay on June 23, at which point he petitioned this court for the issuance of a writ of supersedeas and an immediate stay order. In writ proceeding *Williams* v. *Ashbourne Construction Co.* (Nov. 12, 1997) A078928 (nonpub. opn.), we first issued a temporary stay to prevent demolition of the 2617 Sutter building on June 24 and then, following further briefing on the matter, and with one dissent, issued a further temporary stay order regarding the demolition on July 15.

The matter was then returned to the trial court where appellant first disqualified the Honorable William J. Cahill, who had earlier denied his application for a stay in that court. After some preliminary skirmishing, a hearing on appellant's petition was held before the Honorable Raymond Williamson on July 31. By a statement of decision and order issued September 29, the court denied that part of the petition relating to the demolition permit but granted the part pertaining to the building permit; it ruled that the Board had not adequately considered its own "Guidelines" in approving the latter. Judgment to the same effect followed on October 15.

On November 6, appellant filed a motion under section 1021.5 seeking an award of attorneys' fees. Various individuals filed declarations in support of the motion which, naturally, the city attorney and the attorneys for the developer opposed. Following a December 11 hearing on this motion, on January 20, 1998, the trial court issued an order denying it. Appellant filed a timely notice of appeal.

### III. DISCUSSION

#### A. *Appealability and Standard of Review*

■ An order denying a motion for attorneys' fees under section 1021.5 is appealable. (See our opinion in *Norman I. Krug Real Estate Investments, Inc.* v. *Praszker* (1990) 220 Cal.App.3d 35, 46 [269 Cal.Rptr. 228].)

■ As we have also noted, "[a]n award of attorney fees under section 1021.5 lies within the trial court's discretion and will not be reversed on appeal absent a showing of abuse." (*Committee to Defend Reproductive Rights* v. *A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 645 [280 Cal.Rptr. 329], citing *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [185

Cal.Rptr. 232, 649 P.2d 874].) Numerous other recent appellate decisions have reiterated this principle. (See, e.g., *Schwartz* v. *City of Rosemead* (1984) 155 Cal.App.3d 547, 554-555 [202 Cal.Rptr. 400] (*Schwartz*); *Bartling* v. *Glendale Adventist Medical Center* (1986) 184 Cal.App.3d 97, 103 [228 Cal.Rptr. 847]; *Feminist Women's Health Center* v. *Blythe* (1995) 32 Cal.App.4th 1641, 1666 [39 Cal.Rptr.2d 189] (*Blythe*); *Satrap* v. *Pacific Gas & Electric Co.* (1996) 42 Cal.App.4th 72, 77 [49 Cal.Rptr.2d 348]; *Hewlett* v. *Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 544 [63 Cal.Rptr.2d 118].)

As applied, this rule means that we should not reverse unless "the record establishes there is no reasonable basis" for the trial court's action. (*Blythe, supra,* 32 Cal.App.4th at p. 1666.) Particularly in a case such as this, fully briefed and argued before the same trial court which heard (and partially granted) the petition, this is not an insignificant point.

B. *Public Benefit v. Individual Stake*

■ The trial court's order on the issue of attorneys' fee noted, initially, that section 1021.5 "allows an award of attorneys' fees where a private individual enforces an important right affecting the public interest which confers a significant benefit to a large class of persons." However, the trial court continued, a "key requirement" of such an award is, in the statutory language, that "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate." (§ 1021.5, subd. (b).) The court then cited two decisions to the effect that, under this prong of the statutory test, an "award is appropriate when the need to pursue the lawsuit is out of proportion to [the individual litigant's] individual stake in the matter." (See *Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 112-115 [212 Cal.Rptr. 485] (*Beach Colony II*); *Schwartz, supra,* 155 Cal.App.3d at pp. 558-560.)

The trial court then noted that, while appellant's actions had conferred a "benefit" on his "neighborhood, and arguably City residents in general," he also had a "large personal stake in the matter in preventing construction of a structure which was incompatible with the Victorian character of his neighborhood." As a consequence, the court ruled, that the ultimate result of requiring the city to comply with its own planning code "while admirable, was incidental to [appellant's] desire not to have the unsightly structure in his view."

■ ▪The context of this ruling is important; it can best be appreciated via a quotation from one of the two cases relied upon by the trial court,

*Schwartz, supra,* 155 Cal.App.3d 547, 555: "Our Supreme Court's decision in *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*), set forth the three requirements which must be met in order for a plaintiff to recover attorneys fees pursuant to section 1021.5. The private attorney general theory, as codified in this section, authorizes an award of attorneys fees when: (1) the action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate. (*Woodland Hills, supra,* 23 Cal.3d at pp. 934-935.) The trial court, 'utilizing its traditional equitable discretion (now codified in § 1021.5) must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory.' (*Id.* at p. 938.)."

■ The trial court's holding in the case before us pertains—and pertains only—to the third of these three requirements. It interpreted authority dealing with that third requirement to mean that an award was appropriate where the public benefit, i.e., the "need to pursue the lawsuit is out of proportion to his individual stake in the matter."

Appellant attacks the trial court's reasoning, noting that (a) many of his neighbors vigorously supported him before the planning commission and the Board, (b) other interested public groups, including one state Senator, provided declarations to the trial court regarding the public benefit aspect of what had been accomplished via the statement of decision and judgment in the writ proceeding, and (c) the ultimate outcome had the effective result of requiring the Board (and not just the planning commission) to pay greater attention to the city's Guidelines than it had theretofore done. But appellant particularly focuses on the trial court's conclusion that, inasmuch as he had a "large personal stake" in the outcome of the litigation, this particular prong of the section 1021.5 test was not satisfied. He notes that "[t]he Court's Order does not specify the basis of its findings of a 'large personal stake'" and goes on to argue that, in fact, he had no such stake because the record established that the new proposed structure would not diminish his own property's value, and thus he had no "pecuniary interest in the outcome of the litigation." Appellant argues that, under this test, his "stake" or "interest" in the litigation was nil because it was not "economic" or "pecuniary."

The Court of Appeal in *Schwartz* accurately framed this issue by, again, reverting to our Supreme Court's holding in *Woodland Hills Residents Assn.,*

*Inc.* v. *City Council* (1979) 23 Cal.3d [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*): "In discussing the third requirement of necessity and financial burden of private enforcement, *Woodland Hills* relied in part on the Court of Appeal decision in *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 89 [144 Cal.Rptr. 71], and quoted the following language from that decision: ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory *transcends his personal interest*, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff '*out of proportion to his individual stake in the matter.*' [Citation.]" ' [Citation.]" (*Schwartz, supra*, 155 Cal.App.3d at p. 558, italics added.)

We agree with the trial court and disagree with appellant regarding his individual stake in the litigation.[2] In the first place, nothing in the authority relied on by the trial court limits the concept of a party's personal interest in the outcome of litigation to pecuniary or economic interest. To be sure, in both *Schwartz* and *Beach Colony II* the private interest being asserted was both generally economic and specifically pertinent to property values, but neither decision holds that the concept of personal interest or individual stake in the litigation is limited to such an impact.

It is also true that most of the cases discussing the third requirement of *Woodland Hills* have involved private litigants who are asserting, in conjunction with an alleged public interest issue, a private economic interest. An example is a decision by our colleagues in Division One of this district, *Satrap* v. *Pacific Gas & Electric Co., supra*, 42 Cal.App.4th at pages 77-79 (also collecting, at p. 78, other cases involving purely economic interests).

However, there is also authority applying the same rule where the litigant is advancing a noneconomic, albeit personal, interest. Thus, in *Christward Ministry* v. *County of San Diego* (1993) 13 Cal.App.4th 31, 49-50 [16

---

[2]Our holding thus makes it unnecessary for us to discuss the contentions of respondent Board that (1) the litigation did not result in the enforcement of an important right affecting the public interest, (2) nor did it benefit the general public or a large class of persons, and (3) under *Trope* v. *Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259] (a case arising under Civ. Code, § 1717), appellant could not qualify for an attorneys' fee award because he always proceeded in propria persona. In addition to being unnecessary, it is also inappropriate for us to address points (1) and (2) for the simple reason that the trial court made no findings relative to these two requirements for an award. However, before leaving these contentions completely, we are constrained to make an observation relative to one of them. Regarding the issue of public benefit (point (1) above), respondent suggests that it was the 1996 enactment by the city of section 311(c) of the planning code (rather than appellant's litigation or anything else) which led the San Francisco Planning Commission to start paying heed to its published Guidelines. We respectfully suggest that this argument borders on the specious. As the trial court found in its 1997 partial grant of a writ of mandamus, the principal respondent here, the Board, did not in fact pay sufficient attention to these Guidelines *one year after* section 311(c) was adopted.

Cal.Rptr.2d 435], the court considered an appeal by a nonprofit religious organization which had partially prevailed in the trial court in a CEQA (California Environmental Quality Act) lawsuit alleging that the defendant county and others had filed an inadequate environmental impact report (EIR) regarding a proposed landfill project on property bordering on its "Questhaven Retreat." One of the chief concerns of the plaintiff regarding the project was the possible "obstruction of its panoramic view of the Pacific Ocean by the vertical expansion of the [l]andfill." (*Id.* at p. 39.) The lower court found that the EIR had in fact directly addressed this issue, but nonetheless concluded that the EIR was deficient in other respects (principally its failure to address water quality issues). After the county prepared a supplemental EIR addressing water impacts and other similar issues, a final judgment was entered and the plaintiff then moved for an award of attorneys' fees under section 1021.5 The trial court denied the motion, noting (much as Judge Williamson observed here) that "while 'it's perhaps true that public interest is being vindicated by this writ,' [the plaintiff's] 'private interests . . . with reference to the use of their property is the real basis for [the] action . . . .' " (13 Cal.App.4th at p. 49.) The plaintiff appealed on this and other grounds. In affirming, the appellate court first noted the pertinent abuse of discretion standard of review and then stated: "we cannot quarrel with the reasonableness of the court's assessment of Christward's private interest in the litigation." (*Id.* at p. 50.) Clearly, this decision stands for the proposition that the private interest being weighed against the public interest aspect of the litigation does not necessarily have to be purely economic; the interest there being asserted related, as here, purely to aesthetic considerations.

Similarly, Division One of this district affirmed the trial court's denial of a request for attorneys' fees by a property owner which had forced the City and County of San Francisco "to undertake a threshold environmental evaluation of the effect of" an ordinance regulating the conversion of residential hotel property. In so holding, it noted that the property owner's "primary purpose in bringing suit was to pursue and protect its own property rights rather than to further a significant public interest." (*Terminal Plaza Corp.* v. *City and County of San Francisco* (1986) 177 Cal.App.3d 892, 914 [223 Cal.Rptr. 379].)

Finally, two cases involving public entities litigating against one another also make clear that the individual stake of the plaintiff entity can be a nonmonetary one, e.g., road closures or environmental interests. (See *City of Hawaiian Gardens* v. *City of Long Beach* (1998) 61 Cal.App.4th 1100,

1112-1113 [72 Cal.Rptr.2d 134],[3] and *County of Inyo* v. *City of Los Angeles*, *supra*, 78 Cal.App.3d at pp. 88-90.)[4]

On rehearing, appellant cites *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321 [193 Cal.Rptr. 900, 667 P.2d 704] (*Press*), as critical authority in support of his argument that the individual stake a litigant is advancing must be pecuniary in order to preclude a recovery of attorneys' fees. *Press* was an appeal from a superior court's award of attorneys' fees to litigants who secured an injunction against Lucky Stores, which had sought to preclude them from collecting signatures from store patrons in an effort to qualify an initiative for the ballot. The successful litigants were the appellants, who argued that the trial court abused its discretion by granting them *too little* by way of attorneys' fees.[5] The court principally discussed two issues in the course of its ten-page majority opinion: (1) whether the appellants' action had conferred a "significant benefit" to the public, i.e., satisfied the second statutory requirement, and (2) whether the trial court erred in its method of computing the award. As to both issues, the majority, led by Chief Justice Bird, agreed with the appellant.

However, in the course of its opinion, the majority referred, in a single brief paragraph, to the statutory requirement at issue here: "Plaintiffs' action also fulfills section 1021.5's mandate that 'the necessity and financial burden of private enforcement [be] such as to make the award appropriate.' This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit. Since plaintiffs had no pecuniary interest in the outcome of the litigation, 'the financial burden in this case [was] such that an

---

[3]Appellant protests that this case is distinguishable because it involved a suit between two public entities. He notes, correctly, that section 1021.5 expressly contemplates such litigation by its use of the clause "or of enforcement by one public entity against another public entity . . . ." (§ 1021.5, subd. (b).) However, that clause only clarifies that the litigation does not have to be strictly private enforcement to qualify for an award. The clause does not modify the statutory language which triggers the third requirement at issue here, to wit, that the "necessity and financial burden"—of whichever enforcement is involved—be "such as to make the award appropriate." (*Ibid.*)

[4]It was this opinion, after all, that our Supreme Court relied upon so heavily in its 1979 *Woodland Hills* decision in defining the third requirement. And in the *County of Inyo* decision, which applied the private attorney general doctrine as it existed prior to the effective date of section 1021.5, the Court of Appeal made clear that the private interest of the litigant may be far broader than an economic one: "Inyo County went to court as champion of local environmental values, which it sought to preserve for the benefit of its present and future inhabitants. This action is not a 'public interest' lawsuit in the sense that it is waged for values other than the petitioner's. The litigation is self-serving. The victory won by the county in 1977 bulked large enough to warrant the cost of winning it. The necessity for enforcement by Inyo County did not place on it 'a burden out of proportion to [its] individual stake in the matter.' [Citation.]" (*County of Inyo* v. *City of Los Angeles, supra*, 78 Cal.App.3d at p. 90.)

[5]More precisely, the issue was whether the trial court should have followed the "lodestar adjustment" method mandated by *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]. (See *Press, supra*, 34 Cal.3d at pp. 317, 321-325.)

attorney fee award [was] appropriate in order to assure the effectuation of an important public policy.' (*Woodland Hills, supra*, 23 Cal.3d at p. 942.).'" (*Press, supra*, 34 Cal.3d at p. 321, fn. omitted.)

In a footnote to this paragraph, the court elaborated on the nature of the "personal interest" of the litigant: "That plaintiffs' personal interests in the outcome of the oil profits initiative were sufficient to induce them to bring this action is irrelevant. As the statute makes clear, subdivision (b) of section 1021.5 focuses not on plaintiffs' abstract personal stake, but on the financial incentives and burdens related to bringing suit. Indeed, in the absence of some concrete personal interest in the issue being litigated, the putative plaintiff would lack standing to bring an action." (*Press, supra*, 34 Cal.3d at p. 321, fn. 11.)

Appellant argues that the *Press* court's use of the terms "pecuniary interest" and "financial incentives" supports his position that, inasmuch as he never at any time contended to the trial court that he had an "economic," "pecuniary" or "financial" interest in preventing the new 2617 Sutter building from going forward, that court erred in finding that his personal interest in the outcome outweighed any public benefit. The interest he successfully asserted below, he now argues, falls under the heading of an "abstract personal stake" which, as the *Press* footnote makes clear, does not disqualify its holder from an attorneys' fee award.

We are unpersuaded. First of all, as already noted, this issue was not in any way central to the holding of *Press*. Indeed, it would appear from the opinion that the point (i.e., the satisfaction by appellant of the third statutory factor) was not even contested by the respondent there. Second, and more importantly, although the court does indeed use the terms "pecuniary interest" and "financial incentives" in the brief paragraph and footnote it devotes to the issue, it does not hold that such are the *only* type of personal interests that would disqualify a litigant from a fee award. Indeed, the court also uses the term "concrete personal interest in the issue being litigated" as a capsule description of the sorts of "interest" it was describing.

There was nothing abstract and everything concrete about the interests so tenaciously asserted by this appellant in the court below. Those interests related directly to a specific piece of real property owned by him: his family home. The record before us makes manifest that, whatever the impact of the planned 2617 Sutter building on the monetary value of that piece of real property, appellant had a strong personal *and* property interest in not having a 7000-square-foot, 3-unit building erected next door to his home. The record before us is replete with references *by appellant* to the

substantial "intrusion" which would be effected by the new building, the significant blockages of light, views and air which would result from its construction, the negative impact on his and his neighbors' privacy, the lack of adequate parking which was to be provided, etc. These assertions were supported by, among other things, a large number of photographs of the existing views and available light. Even more importantly, the submissions made to both the trial court and, before it, the Board, stressed the overall harmonious character of this 100 percent Victorian-structure block of Sutter Street and the significant aesthetic loss which would result from the intrusion of something so completely out of architectural context as the proposed new structure.

Those interests are not even slightly "abstract." Thus, a trial court does not abuse its discretion in concluding that a property owner's interest in maintaining the aesthetic integrity of his immediate neighborhood and protecting both his property's privacy and its access to light, air and views, constitutes an "individual stake" equally as significant as a purely pecuniary one.

## IV. Disposition

The order appealed from is affirmed.

Lambden, J., and Ruvolo, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 21, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.