[No. B017666. Second Dist., Div. Five. Aug. 7, 1986.]

WILLIAM FRANCIS BARTLING et al., Plaintiffs and Appellants, v. GLENDALE ADVENTIST MEDICAL CENTER et al., Defendants and Respondents.

98

**COUNSEL**

Richard Stanley Scott and Malley, Rosenfeld & Scott for Plaintiffs and Appellants.

William H. Ginsburg, George James Stephan, Gerald W. Connor, H. Scott Roman and Wood, Lucksinger & Epstein for Defendants and Respondents.

**OPINION**

**HASTINGS, J.**—In *Bartling* v. *Superior Court* (1984) 163 Cal.App.3d 186 [209 Cal.Rptr. 220] (*Bartling I*), we held that a competent, nonterminally ill adult patient has a constitutionally based right to refuse and/or to terminate medical treatment. We remanded to the superior court for a determination

as to whether the granting of attorneys' fees pursuant to Code of Civil Procedure section 1021.5[1] was appropriate. (*Bartling I*, at p. 197.) This appeal is from the superior court's denial of appellants', William Francis Bartling et al. (appellants), motion to award attorneys fees under this statute.

FACTS

To facilitate an understanding of this case, we repeat the synopsis of the underlying facts related in *Bartling I*, at pages 189-190: Mr. Bartling, at 70 years of age, "suffered from emphysema, chronic respiratory failure, arteriosclerosis, an abdominal aneurysm (abnormal ballooning of the main artery passing through the abdomen to the legs), and a malignant tumor of the lung. Mr. Bartling also had a history of . . . 'chronic acute anxiety/depression' and alcoholism. [¶] Mr. Bartling entered [respondent] Glendale Adventist [Medical Center] on April 8, 1984, for treatment of his depression. A routine physical examination, including a chest X-ray, was performed, and a tumor was discovered on Mr. Bartling's lung. A biopsy of the tumor was performed by inserting a needle in the lung, which caused the lung to collapse. Tubes were inserted in Mr. Bartling's chest and through his nasal passage and throat in order to reinflate his lung. Because of his emphysema, the hole made by the biopsy needle did not heal properly, and the lung did not reinflate. While Mr. Bartling was being treated with antibiotics to promote healing of the lung, a tracheotomy was performed and he was placed on a ventilator. Mr. Bartling remained on the ventilator until the time of his death, and efforts to 'wean' him from the machine were unsuccessful. [¶] On several occasions in April, Mr. Bartling tried to remove the ventilator tubes. To prevent accidental or deliberate disconnection of the ventilator tubes (or any of the other tubes to which he was attached), Mr. Bartling's wrists were placed in 'soft restraints.'" In May 1984, Mr. Bartling, with assistance of counsel, prepared a living will, stating his desire to be relieved from his ventilator and to die a natural and dignified death. This document was executed by Mr. and Mrs. Bartling and by Mr. Bartling's daughter. Glendale Adventist and the treating physicians refused to honor this will and to remove the ventilator or the restraints.

---

[1]Code of Civil Procedure section 1021.5 provides as follows: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

All references are to the Code of Civil Procedure.

The Bartlings sought an injunction restraining Glendale Adventist and the doctors from administering any unconsented medical care to Mr. Bartling. This included forcing him to undergo mechanical breathing through the ventilator and other medical procedures. The superior court denied this petition; the Bartlings appealed, and *Bartling I,* resulted.

## THE MOTION FOR ATTORNEY'S FEES

When appellants moved the superior court for section 1021.5 attorneys fees, they argued that their suit had resulted in our holding that the right of a competent adult to refuse medical treatment has its origins in the constitutional right to privacy; that the patient's right to self-determination as to his own medical treatment is paramount to the interest of the patient's hospital; and that the right to have life-support equipment disconnected is *not* limited to comatose, terminally ill patients. The decision has been cited and followed in other jurisdictions, and this constituted the requisite important right affecting the public interest, in which the burden of private enforcement makes an award appropriate. (§ 1021.5.)[2] In support, appellants filed declarations by Richard S. Scott, the Bartlings' attorney; George J. Annas, Utley Professor of Health Law at Boston University Schools of Medicine; Alexander M. Capron, Topping Professor of Law, Medicine and Public Policy at the University of Southern California and from 1980-1983 the Executive Director of President's Commission for the Study of Ethical Problems in Medicine and Biomedical and Behavioral Research; Hillel Chodos, attorney specializing in civil litigation at trial and appellate levels; Leonard H. Glantz, Associate Professor of Health Law at Boston University Schools of Medicine and Public Health and Associate Director of the School of Public Health; William K. Swank, attorney at law; William J. Winslade, Associate Professor of Medical Jurisprudence at the Institute for the Medical Humanities, University of Texas Medical Branch. These declarations stressed the importance of the *Bartling I* decision or, in the case of the attorneys, the basis and reasonableness of the fee award requested.

Glendale Adventist countered that numerous and substantial factual disputes had not been resolved by *Bartling I,* e.g., whether or not Mr. Bartling consented to the removal of the ventilator; therefore, an award of attorneys fees would be premature if granted before resolution of these disputes. Furthermore, Glendale Adventist argued, section 1021.5 requirements had not been satisfied and since its defense had been undertaken to protect public interests and rights equal to those sought by the Bartlings, the court should be guided by principles of equity and deny the motion.

---

[2]The touchstone amount requested was $104,666.50; with requested multiplier of 1.75, the total amount was $183,166.38.

■ By minute order dated November 12, 1985, the court denied the motion basing its denial on two inappropriate grounds. First, it concluded that *Bartling I* was a reaffirmance of the holding of *Cobbs* v. *Grant* (1972) 8 Cal.3d 229 [104 Cal.Rptr. 505, 502 P.2d 1]. In *Cobbs,* the issue was the amount and type of disclosure required to insure an informed consent by a patient seeking medical care. Though *Cobbs* did recognize a patient's right to decide whether or not to undertake treatment (*Cobbs,* at p. 244), the acknowledgement of this right was in relation to the duty of the treating physician to disclose the dangers inherently and potentially involved in a proposed therapy. (*Cobbs,* at p. 243.) Such was not our concern in *Bartling I.* The paramount issue in *Bartling I* was whether a nonterminally ill, competent, adult patient had a right to terminate life-supporting treatment. We answered affirmatively, holding that this right was grounded in the constitutional right of privacy. (*Bartling,* at pp. 195-196.) Second, the trial court held that since the Bartling's consent to removal of the ventilator had yet to be resolved, an award would be premature. Our holding in *Bartling I* was not dependent upon a resolution of this issue.

## DISCUSSION

■ The "private attorney general" doctrine, is embodied in section 1021.5 (fn. 1, *ante*). The rationale for the development of this concept was summarized in *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 632 [186 Cal.Rptr. 754, 652 P.2d 985]: "The private-attorney-general theory rests on the policy of encouraging private actions to vindicate important rights affecting the public interest, without regard to material gain. [Citations.] A central function is 'to call public officials to account and to insist that they enforce the law . . . .' [Citation.] Implicit is the recognition that 'without some mechanism authorizing the award of attorney fees, private actions to enforce . . . important public policies will as a practical matter frequently be infeasible.' [Citation.]" The fundamental objective of this doctrine is to encourage this private action to effectuate "'. . . a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens.' [Citation.]" (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].)

Early cases which awarded private attorney general fees involved, among other things, enforcement of Civil Rights Act of 1964 (*Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400 [19 L.Ed.2d 1263, 88 S.Ct. 964]); fair housing laws (*Lee* v. *Southern Home Sites Corp.* (5th Cir. 1971) 444 F.2d 143; and reapportionment rights (*Sims* v. *Amos* (Ala. 1972) 340 F.Supp. 691 affd. 409 U.S. 942 [34 L.Ed.2d 215, 93 S.Ct. 290]). In California, awards under section 1021.5 have been granted in cases which involved,

among other things, enforcement of constitutional rights requiring that financing be equalized among school districts (*Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]; compliance with CEQA by proper submission of an EIR (*Rich* v. *City of Benicia* (1979) 98 Cal.App.3d 428 [159 Cal.Rptr. 473]); subdivision map conformance to a general plan (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra*); and jail inmates' rights to reasonable exercise periods (*Daniels* v. *McKinney* (1983) 146 Cal.App.3d 42 [193 Cal.Rptr. 842]). As evidenced by this list, practically all private attorney general and section 1021.5 cases have involved a public entity and vindication of recognized public policy.

The case at hand, concerns two private civil litigants. ■ Section 1021.5 allows for an award when a private party is a defendant. (*Franzblau* v. *Monardo* (1980) 108 Cal.App.3d 522, 529 [166 Cal.Rptr. 610].)

■ It is the trial court's initial responsibility to determine the appropriateness of the fee. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, 925-926.) Whether appellants have met their requirement for an award of fees and the reasonable amount of the award are questions best decided by the trial court. (See *Schwartz* v. *City of Rosemead* (1984) 155 Cal.App.3d 547, 555 [202 Cal.Rptr. 400], citing *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 559 [183 Cal.Rptr. 73, 645 P.2d 124].) The standard of review after the trial court has ruled is abuse of discretion. (*Schwartz, supra,* at p. 555.) To determine abuse we must review the entire record on the issue, paying particular attention to the court's stated reasons in denying or awarding fees and whether it applied the proper standards of law in reaching its decision. Unfortunately in our present case no court reporter was present at the argument on the motion, therefore we have nothing before us to review on the court's decisionmaking process except the reasons given by the court in the minute order denying the motion for fees.

■ As stated earlier in this opinion, the court denied the motion for fees on two inappropriate grounds, therefore based on the record there was a prima facie showing of an abuse of discretion. Even so, we cannot reverse in favor of appellants. The trial court must evaluate the attorney fee question pursuant to section 1021.5. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra.*) Utilizing its traditional equitable discretion (now codified in the section) it must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory. (*Schwartz* v. *City of Rosemead, supra,* citing *Woodland Hills Residents Assn., Inc.* v. *City Council,* 23 Cal.3d 917.) All parties are entitled to a full hearing properly recorded demonstrating that the trial court con-

sidered all of the requirements of section 1021.5. (See fn. 1, *ante.*) When this is done we can appropriately review the decision.

Case law has added another factor for the trial court's consideration on remand. ■ If special circumstances render an award unjust, the court can deny attorneys fees. This concept was first recognized (although not used) in two federal cases, *Newman* v. *Piggy Park Enterprises, supra,* 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1266], and *Northcross* v. *Memphis Board of Education* (1973) 412 U.S. 427 [37 L.Ed.2d 48, 93 S.Ct. 2201]. ■ It was adopted by our Supreme Court in *Serrano* v. *Unruh, supra.* After summarizing the development of the private attorney general theory, the court granted attorneys fees, but only after stating: ". . . absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent . . . ." (*Serrano* v. *Unruh,* at p. 639.)[3] Glendale Adventist referred to this exception at oral argument before us, claiming that fees would be unjust because Glendale Adventist and the defendant doctors were diligently defending the preservation of life which is also an important public interest.

The case must be remanded to enable the trial court to consider appellant's motion for attorneys fees based upon the criteria set forth above. Nothing that we have said in this opinion is intended to influence the trial court in its decision on the merits. We do not lean in favor of any party.

The order denying attorneys fees is reversed. All parties to pay their own costs on appeal.

Feinerman, P. J., and Ashby, J., concurred.

---

[3]In relation to this statement the court added footnote 29 that states: "We follow the lead of federal courts because we find, on an independent examination of case law, that the federal rule has proved workable for enforcing the dictates of the private-attorney-general doctrine embodied in federal statutes comparable to section 1021.5. . . ."