[Nos. B024452, B022775. Second Dist., Div. Two. Oct. 29, 1987.]

ELIZABETH BOUVIA, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Malley, Scott & Koffman, Richard Stanley Scott, King, Robyn Mc Donald Schiffman, Brady & Bazar, Jacqueline M. Scheck, Griffith D. Thomas, Fred Okrand, Paul Hoffman, Roth & Streifer, Andrew Roth and Stephen Rease for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, Steven J. Carnevale and Daniel D. Mikesell, Jr., Deputy County Counsel, for Defendants and Respondents.

## OPINION

COMPTON, J.—In this consolidated appeal, plaintiff Elizabeth Bouvia seeks review of two separate orders[1] denying her requests for an award of attorney's fees under the private attorney general doctrine codified in Code of Civil Procedure section 1021.5 and the federal Civil Rights Attorney's Fees Award Act of 1976 (42 U.S.C. § 1988).[2] We affirm in part and reverse in part.

This is the second time the instant case has come before us. In 1986, Bouvia, then 28 years old and suffering from severe cerebral palsy, sought the removal of a nasogastric feeding tube inserted against her will by the medical staff of the High Desert Hospital (HDH), a skilled nursing facility operated by the County of Los Angeles Department of Health Services. Shortly after being admitted to that institution in December 1985, plaintiff's caloric intake and weight fell to a level that her treating physician, Dr. Harry Glencher, M.D., believed was life threatening. Glenchur, who also served as medical director of the hospital, subsequently ordered that Bouvia be force-fed until her weight stabilized. Contending that she had a right to refuse any and all medical treatment, plaintiff initiated the underlying action for damages and injunctive relief against the county, the hospital, and the doctor, among others.

During the proceedings which followed, the trial court heard evidence detailing Bouvia's previous attempt to end her life by self-starvation. That attempt was widely publicized in the media and resulted in a court order allowing the hospital in which she was a patient to commence force-feeding by insertion of a nasogastric tube. Although plaintiff eventually discharged herself from that facility, she soon found that few physicians or institutions

---

[1] Although the orders here involved were issued by two separate trial courts at different times and in different proceedings, we have consolidated the cases on this appeal for convenience of reference and review. Both cases involve similar legal issues and arise out of a common set of facts.

[2] Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

42 United States Code section 1988 reads in pertinent part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

would aid her in her quest to bring about her own death. Forced then to end her fast, Bouvia entered a private convalescent hospital agreeing not to attempt starvation. In the months which followed, however, plaintiff continued to lose weight and suffered increasing discomfort from arthritis and other ailments.

In September 1985, Bouvia voluntarily admitted herself to Los Angeles County-University of Southern California Medical Center (County/USC Medical Center) in hopes of receiving treatment to relieve her chronic pain. Following trials of various medications and administration routes, a device known as a Hickman catheter was surgically implanted in the anterior chest wall and attached to a "Harvard pump" for the purpose of injecting into the circulatory system periodic doses of morphine sulfate, a potent narcotic analgesic. Relieved of some, but not all, of her physical pain, and no longer in need of acute care, plaintiff was transferred to HDH.[3] Thus commenced the series of events which led to the filing of the underlying litigation.

Believing that her rejection of medical treatment was motivated by a desire to commit suicide, the trial court denied plaintiff's request for injunctive relief. Bouvia thereafter filed her application for writ of mandate in this court. In a published opinion we granted the petition and directed the superior court to issue a temporary injunction ordering removal of the feeding tube and prohibiting its replacement without plaintiff's consent. (See *Bouvia* v. *Superior Court* (1986) 179 Cal.App.3d 1127 [225 Cal.Rptr. 297].) Upon remand, Bouvia's counsel sought an award of fees under both federal and state law. The trial court, however, denied the request after concluding that the proceedings had not produced a "significant benefit" within the meaning of Code of Civil Procedure section 1021.5, and that in view of the pending damage action it was premature to award fees under 42 United States Code section 1988.

Immediately after the filing of our decision in the writ proceedings, Bouvia was informed by Dr. Glenchur that the use of morphine in treatment of her chronic pain was no longer "medically-indicated" and that the catheter and pump would be removed. Although plaintiff vehemently objected, the staff gradually began reducing the dosage of the drug and substituting other medications to ease the withdrawal process. With the aid of counsel, Bouvia again filed a damage action accompanied by a request for injunctive relief in hopes of prohibiting the hospital from further decreasing her morphine intake. Following the issuance of a temporary restraining order to preserve the status quo, the trial court appointed two independent physicians as

---

[3] Prior to the transfer, county officials had unsuccessfully attempted to place Bouvia in a variety of public and private facilities.

special masters to assist in evaluating plaintiff's medical needs. Their report essentially recommended that Bouvia be transferred to another facility where, after expert examination, she could be involved in a comprehensive treatment regimen designed to lessen her psychological and physiological dependence on morphine. After hearing argument, the court issued a temporary injunction directing in part that plaintiff be returned forthwith to the Medical Center. Conspicuously absent from the order, however, was any reference to future treatment or care.

Bouvia subsequently moved for an award of fees incurred in obtaining the injunction, contending that she was a "prevailing party" in an action to enforce her civil rights under federal law. (See 42 U.S.C. § 1988.) Finding that plaintiff had not suffered a constitutional deprivation sufficient to state a cause of action under 42 United States Code section 1983,[4] the trial court denied the motion.

In approaching the various issues raised on this appeal, we first reject the suggestion that our prior opinion implicitly determined the propriety of a fee award once the matter was remanded to the trial court. Contrary to the argument advanced by defendants, the question of whether plaintiff was entitled to such an award under either state or federal law was simply not raised by the parties or considered by this court in the writ proceedings. As will be discussed in greater detail, *infra,* some of the criteria outlined in Code of Civil Procedure section 1021.5 and 42 United States Code section 1988 entail factual determinations that an appellate court is in no position to undertake. ▉ Whether a party has met the requirements for an award of fees and the reasonable amount of such an award are questions best decided by the trial court in the first instance. (See *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 559 [183 Cal.Rptr. 73, 645 P.2d 124]; *Schwartz* v. *City of Rosemead* (1984) 155 Cal.App.3d 547, 555 [202 Cal.Rptr. 400].) That court, utilizing its traditional equitable discretion, must realistically assess the litigation and determine from a practical perspective whether the statutory criteria have been met. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874].) Its decision will be reversed only if there has been a prejudicial abuse of discretion. (*Id.* at p. 143.) To make such a determination we must review the entire record, paying particular attention to the trial court's stated reasons in denying or awarding fees and whether it applied the proper standards of law in reach-

---

[4] 42 United States Code section 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

ing its decision. (See *Bartling* v. *Glendale Adventist Medical Center* (*Bartling II*) (1986) 184 Cal.App.3d 97, 103 [228 Cal.Rptr. 847].)

In the present case, we had no such factual record to review when considering the appropriateness of issuing a writ of mandate to compel the removal of plaintiff's feeding tube. ■ ■■ ■ Under the circumstances, plaintiff was entitled to have the question of attorney's fees litigated first in the trial court before raising the issue here.[5]

■ Turning now to the substantive issues posed on this appeal, we first consider whether the trial court had any reasonable basis for concluding that the appellate opinion obtained through plaintiff's legal action failed to vindicate an important right or confer a significant benefit on the general public within the meaning of Code of Civil Procedure section 1021.5.

■ The private attorney general doctrine is one of several exceptions to the general rule that each party must bear its own attorney's fees. (See *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; see also Code Civ. Proc., § 1021.) Originally developed by the courts pursuant to their inherent equitable powers, the doctrine was given statutory recognition with the enactment of Code of Civil Procedure section 1021.5. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].) That statute seeks to encourage the presentation of meritorious claims affecting large number of persons by providing successful litigants attorney's fees in public interest lawsuits. (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 44-48 [141 Cal.Rptr. 315, 569 P.2d 1303]; *Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 111 [212 Cal.Rptr. 485].) The doctrine itself rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of fees, private actions to enforce such important policies will, as a practical matter, frequently be infeasible. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 933.) Because plaintiffs are encouraged to assert their civil rights, attorney's fees are appropriate even if the successful party was represented by public interest lawyers and did not actually incur any legal expense. (*Folsom* v. *Butte*

---

[5] We further reject the argument that our denial of costs to either party in the writ proceedings somehow precluded plaintiff from attempting to recover attorney's fees upon remand. Although statutory fees may be recoverable as costs (see *T.E.D. Bearing Co.* v. *Walter E. Heller & Co.* (1974) 38 Cal.App.3d 59, 62 [112 Cal.Rptr. 910]), we are of the view that a summary denial of costs by an appellate court in an original proceeding does not encompass a denial of fees under Code of Civil Procedure section 1021.5 or 42 United States Code section 1988 when that issue has not been raised by either party. (Cf. *de la Cuesta* v. *Superior Court* (1984) 152 Cal.App.3d 945, 950 [200 Cal.Rptr. 1].)

*County Assn. of Governments* (1982) 32 Cal.3d 668, 684 [186 Cal.Rptr. 589, 652 P.2d 437]; *Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 476 [201 Cal.Rptr. 424].)

To obtain an award of fees under Code of Civil Procedure section 1021.5, one must be a successful party in an action resulting in the enforcement of an important right affecting the public interest. A significant benefit, whether pecuniary or nonpecuniary, must have been conferred on the general public or a broad class of persons, and the necessity and financial burden of private enforcement must transcend the litigant's personal interest in the controversy. Such fees should not, in the interest of justice, be paid out of any recovery. (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318 [193 Cal.Rptr. 900, 667 P.2d 704]; *People* ex rel. *Deukmejian* v. *Worldwide Church of God* (1981) 127 Cal.App.3d 547, 558 [178 Cal.Rptr. 913]; *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 89 [144 Cal.Rptr. 71], citing *Serrano* v. *Priest, supra,* 20 Cal.3d at pp. 45-46, fn. 18.)

Those cases upholding or allowing an award under Code of Civil Procedure section 1021.5 consistently emphasize that the benefits provided by the protagonist's action must inure primarily to the public and be substantial in a doctrinal if not a material se...e.[6] (*Marini* v. *Muncipal Court* (1979) 99 Cal.App.3d 829, 836-837 [160 Cal.Rptr. 465].) The statute itself, however, provides no concrete standard by which a court may determine whether the right sought to be vindicated is sufficiently important to justify an award of fees. At bottom, the inquiry is an intensely pragmatic one requiring a realistic assessment of the gains which have resulted in any particular action. (See *Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, 685; *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, 939-940.)[7]

---

[6] As the variety of both state and federal cases attests, "important rights" are not necessarily confined to any one subject or field. The private attorney general doctrine has been invoked in litigation involving, among other things, racial discrimination, environmental protection, the rights of mental patients and prisoners, reapportionment, public school financing, unemployment benefits, and free speech. (See, e.g., *Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400 [19. L.Ed.2d 1263, 88 S.Ct. 964]; *Lee* v. *Southern Home Sites Corp.* (5th Cir. 1971) 444 F.2d 143; *Sims* v. *Amos* (Ala. 1972) 340 F.Supp. 691; *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d 311; *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 917; *Serrano* v. *Priest, supra,* 20 Cal.3d 25; *Daniels* v. *McKinney* (1983) 146 Cal.App.3d 42 [193 Cal.Rptr. 842]; *Gunn* v. *Employment Development Dept.* (1979) 94 Cal.App.3d 658 [156 Cal.Rptr. 584].)

[7] At least one recent opinion has suggested, if not held, that an appellate court may be better able to assess whether a given legal action has had a significant impact on the law where the litigation results in a published decision favorable to the party seeking an award of fees. (*Los Angeles Police Protective League* v. *City of Los Angeles* (1986) 188 Cal.App.3d 1 [232 Cal.Rptr. 697].) Although we do not subscribe to such a chauvinistic view, we do believe that an appellate court is in at least as good a position as the trial court to judge whether the legal right enforced through its own opinion vindicates an important public interest and confers a

██ In the case at bench, plaintiff maintains that the "important right" vindicated through this litigation involves the absolute right of *every* competent and informed adult patient, regardless of age, prognosis, or motive, to refuse any medical treatment. (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229 [104 Cal.Rptr. 505, 502 P.2d 1]; *Union Pacific Railway Co.* v. *Botsford* (1891) 141 U.S. 250 [35 L.Ed. 734, 11 S.Ct. 1000].) Defendants do not seriously dispute, nor could they, that plaintiff's action resulted in the enforcement of a significant right.

Echoing the trial court's holding, however, defendants argue that no significant benefit was conferred on the public by the litigation because our prior opinion merely reiterated principles articulated in *Bartling* v. *Superior Court* (1984) 163 Cal.App.3d 186 [209 Cal.Rptr. 220] (*Bartling I*) and *Barber* v. *Superior Court* (1983) 147 Cal.App.3d 1006 [195 Cal.Rptr. 484, 47 A.L.R.4th 1]. While there can be little doubt that *Bouvia* relied upon these and other recent appellate decisions in reaching the result obtained, that fact alone is anything but controlling. ██ It is well established that the enforcement of existing rights, as well as the creation of new rights, may serve as a basis for awarding fees under the private attorney general doctrine. (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d 311, 318; *County of San Luis Obispo* v. *Abalone Alliance* (1986) 178 Cal.App.3d 848, 866 [223 Cal.Rptr. 846].) It is clear that the declaration of rights in so-called "landmark" cases would have little, if any, importance if those rights could not be enforced in subsequent litigation. Defendant's interpretation of Code of Civil Procedure section 1021.5 "would allow vital constitutional principles to become mere theoretical pronouncements of little practical value to ordinary citizens who cannot afford the price of vindicating those rights." (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 319.)

In any event, the *Bouvia* decision did more than simply apply well-settled legal principles to a particular factual setting. At both the trial level and in this court the parties hotly debated the applicability of *Bartling I* and *Barber* to plaintiff's refusal of life-sustaining medical treatment and her demand that the nasogastric tube be removed regardless of the consequences. If the law had been as clear as defendants now claim, such arguments would have been unwarranted and unnecessary. Defendants admit as much when they state that they felt compelled to take the action they did in order to avoid possible civil and/or criminal liability (see Pen. Code, § 401). Perhaps, more importantly, our opinion made it clear that the right to refuse medical treatment exists independent of the reasons which may motivate the exercise of that right. In so holding, Justice Beach pointedly ob-

significant benefit on the general public or a broad class of citizens. (See *Wilkerson* v. *City of Placentia* (1981) 118 Cal.App.3d 435, 445 [173 Cal.Rptr. 294].)

served: "We find nothing in the law to suggest the right to refuse medical treatment may be exercised only if the patient's *motives* meet with someone else's approval. It certainly is not illegal or immoral to prefer a natural, albeit sooner, death than a drugged life attached to a mechanical device." (*Bouvia* v. *Superior Court, supra,* 179 Cal.App.3d 1127, 1145; italics in original.) Our independent research has revealed no other prior decision, either within or without this state, which expresses such a view. Although consistent with earlier authority, *Bouvia's* emphasis on the unconditional right of a competent adult patient to decide his or her own fate appears unique among cases which have considered the issue.[8]

In light of the foregoing, there can be little doubt that vindication of the rights at stake in this litigation effectuated important legal principles that potentially impact a large segment of society. While in one sense the case involved nothing more than the resolution of a dispute between doctor and patient, the substance of the controversy reached far beyond the individual concerns of the parties. All persons are necessarily affected by the nature and extent of the health care they receive and that which is rendered to family and friends. Although the right of bodily self-determination is a basic societal concept and is well rooted in the common law (see *Union Pacific Railway Co.* v. *Botsford, supra,* 141 U.S. 250, 251 [35 L.Ed. 734, 735-737]), only in recent years have courts begun to grapple with the difficult medical, legal, and ethical issues posed by those seeking greater control over their own destinies. As a result, the law in this complex area is evolving towards a greater recognition of patients' rights.

Prior to our decision in *Bouvia,* the courts of this state had addressed the right to refuse life-sustaining medical treatment with regard to patients who were close to death (see *Bartling I, supra,* 163 Cal.App.3d 186) or had been diagnosed as terminal or comatose (see *Barber* v. *Superior Court, supra,* 147 Cal.App.3d 1006). Bouvia herself, however, was 28 years old, with the potential for living an additional 15 to 20 years. Although the trial court had concluded that the preservation of her life for this period outweighed the right to refuse medical treatment, we held that the exercise of that right could not be made to depend upon such a quantitative analysis. Reasoning that equal weight must be given to the quality of a patient's life, we emphasized that the right to forego medical treatment ultimately belongs to the one whose life is in issue.

Viewed in this context, we think it clear that the impact of plaintiff's legal victory is significantly greater than defendants are willing to acknowledge.

---

[8] Our belief in this regard is supported by the declarations executed by various medical and legal experts and submitted in support of plaintiff's fee motion in the trial court. Each expresses the view that the *Bouvia* decision made significant contributions in the area of patient's rights. Defendants failed to submit any contrary evidence.

By helping to clarify the rights of all persons who receive medical treatment, this action served to advance more than the personal interests of any one party. While the rights vindicated here are by nature individual, their enforcement benefits society as a whole. Contrary to the arguments advanced by defendants, this is simply not a case where the public value of plaintiff's action was wholly coincidental to the attainment of her personal goals. (See *Schmid* v. *Lovette, supra,* 154 Cal.App.3d 466, 477.) The motivation for bringing this lawsuit cannot reasonably be attributed exclusively to Bouvia's pecuniary interest in the outcome of this litigation. The rights vindicated in the writ proceedings exist independent of the ultimate success or failure of the damage action. We believe, hopefully, that our opinion in *Bouvia* will be of benefit to the medical profession in allaying some apprehensions concerning a doctor's civil liability in acceding to a patient's wishes.

Based upon the foregoing, we are satisfied that Bouvia is entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5 for work incurred in securing the removal of the nasogastric tube.[9]

As a second string to her bow, Bouvia had sought relief under the federal Civil Rights Attorney's Fees Award Act of 1976 (42 U.S.C. § 1988). That statute provides in relevant part that the prevailing party in a civil rights action may be awarded reasonable attorney's fees as part of the cost of suit. State courts possess concurrent jurisdiction with federal courts to hear claims under the act. (*Martinez* v. *California* (1980) 444 U.S. 277 [62 L.Ed.2d 481, 100 S.Ct. 553]; *Filipino Accountants' Assn.* v. *State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1031 [204 Cal.Rptr. 913].)

Bouvia's resort to the federal statute is possible only because of the fortuitous fact that the hospital personnel and doctors involved were employed by the County of Los Angeles and the hospital itself was maintained by the county. Bouvia was eligible to have her medical care paid for by the state's so-called "MediCal program." She was accepted into the county facility because no space in a private facility was available. For reasons which we will discuss, *infra,* we reject the application of that statute.

 In the action arising out of the withdrawal of the morphine, Bouvia's claim to attorney's fees rests solely on 42 United States Code section 1988. Disagreeing with the trial court's conclusion that there had been no showing of a violation under the civil rights laws (see 42 U.S.C. § 1983),

[9]Such an award will, of course, include reasonable compensation for the time spent prosecuting the fee issue at both the trial and appellate levels. (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 636-639 [186 Cal.Rptr. 754, 652 P.2d 985]; *Slayton* v. *Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 553 [207 Cal.Rptr. 705].)

Bouvia asserts that her success in this suit once more vindicated her right to refuse nonconsensual medical treatment.

■ A claim under 42 United States Code section 1983 requires conduct under color of state law which deprives an individual of rights, privileges, or immunities secured by the Constitution or laws of the United States. (*Parratt* v. *Taylor* (1981) 451 U.S. 527, 535-537 [68 L.Ed.2d 420, 428-430, 101 S.Ct. 1908]; see also *Pyne* v. *Meese* (1985) 172 Cal.App.3d 392, 404 [218 Cal.Rptr. 87]; *Green* v. *Obledo* (1984) 161 Cal.App.3d 678, 682 [207 Cal.Rptr. 830].) Liability may be established by showing that the defendants either personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur. (*Harris* v. *City of Roseburg* (9th Cir. 1981) 664 F.2d 1121, 1125 [65 A.L.R.Fed. 792]; *Arnold* v. *Intern. Business Machines* (9th Cir. 1981) 637 F.2d 1350, 1355.) ■ Here, plaintiff maintains that defendants sought to withdraw her from morphine without her consent and in total disregard of her right to refuse any unwanted medical procedure. Such conduct, she argues, evidenced a countywide policy which deprived her of her civil rights.

Although the trial court expressly acknowledged that plaintiff's right to refuse medical care was grounded in the constitutional right to privacy, it was unwilling to find on the facts presented that any patient possessed the right to dictate a particular course of medical treatment. Recognizing, however, that some relief was necessary, the court exercised its equitable powers to fashion a highly workable compromise requiring plaintiff's transfer to another facility. Viewed in this light, we are unwilling to find at this stage of the proceedings that plaintiff's action somehow served to vindicate her civil rights or established that she suffered a deprivation of rights within the meaning of 42 United States Code section 1983. Perhaps more importantly, the record as it now stands fails to show that Bouvia's alleged injuries were proximately caused by the execution of a governmental policy or custom.

■ In order to successfully maintain an action under 42 United States Code section 1983 against governmental defendants for the tortious conduct of employees under federal law, it is necessary to establish that the conduct occurred in execution of a government's policy or custom promulgated either by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. (*Oklahoma City* v. *Tuttle* (1985) 471 U.S. 808, 817 [85 L.Ed.2d 791, 800, 105 S.Ct. 2427]; *Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 690-691 [56 L.Ed.2d 611, 635-636, 98 S.Ct. 2018]; *Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 569 [195 Cal.Rptr. 268].) The statute, however, may not be read to "impose liability vicariously on governing bodies solely on the basis of the existence of an

employer-employee relationship." (*Monell* v. *New York City Dept. of Social Services, supra,* 436 U.S. at p. 692 [56 L.Ed.2d 611, 635-636].)

 Although proof of a single incident of unconstitutional activity may be sufficient to impose liability under federal law (see *Pembaur* v. *City of Cincinnati* (1986) 475 U.S. 469, 481 [89 L.Ed.2d 452, 463-464, 106 S.Ct. 1292]), we are unable to conclude on the record before us that the actions of the physicians in the instant case, as well as those of the various county health officials involved, were motivated by some governmental policy or custom that sought to deprive Bouvia of her civil rights. The complaint itself makes no such allegation and the proof proferred during the hearing compels no such conclusion. Indeed, the report prepared by the special masters, two highly qualified experts, makes it clear that there are differing medical views concerning the appropriate course of treatment for a patient suffering from chronic pain. The fact that physicians at County/USC Medical Center, another county facility, believed that plaintiff's condition warranted treatment with morphine suggests that there is no consistent policy among county officials. In any event, the evidence at this stage of the proceedings fails to establish that the decision to withdraw Bouvia from morphine was made pursuant to any governmental custom, plan, or scheme. There is simply nothing in the record to indicate that the county itself was a "motivating force" behind the alleged constitutional deprivation. (See *Kentucky* v. *Graham* (1985) 473 U.S. 159, 166 [87 L.Ed.2d 114, 121-122, 105 S.Ct. 3099].)

For reasons similar to those previously discussed, we find no basis upon which the individual defendants could be held personally liable under federal law for the decision to withdraw plaintiff from morphine or the decision to initiate other medically appropriate forms of treatment. There has been no showing that these defendants personally participated in any conduct which proximately caused Bouvia to suffer a deprivation of her civil rights within the meaning of 42 United States Code section 1983. *The above considerations apply with equal force to the action involving the withdrawal of the nasogastric tube.*

While it is true that in both *Bartling I* and *Bouvia* the author of the majority opinion alluded to a constitutional basis for the right vindicated, it seems clear that the right primarily is a development of the common law (*Cobbs* v. *Grant, supra,* 8 Cal.3d 229), and for that reason applies to patients in private as well as governmental facilities and to patients being treated by private as well as publicly employed medical practitioners.

Hence, we refuse to follow Bouvia's purely semantical and syllogistic analysis that a "constitutional" right was violated by a "governmental agent," ergo, there was a violation of the "federal civil rights statute."

Our agreeing with Bouvia's contention that she had a right to refuse any particular form of medical treatment was not the equivalent of finding that the conduct of the doctors or hospital personnel was sufficiently egregious to rise to the level of a violation of the federal civil rights statute. The circumstances of this case are simply not the type of situation which that act was designed to encompass.

Having found that federal law did not and could not serve as a basis for issuance of either preliminary injunction, we can only conclude that both trial courts properly denied plaintiff an award of fees under 42 United States Code section 1988. There was no abuse of discretion in this regard.

The order denying fees in case number C 583828 is reversed and the matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Plaintiff to recover costs and fees on appeal.

The order denying fees in case number C 896997 is affirmed. Plaintiff and defendants to bear their own costs on appeal.

Roth, P. J., and Fukuto, J., concurred.